**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ANDRES MARTINEZ,

Plaintiff,

- v -                                                              Civ. No. 9:09-CV-0665
                                                                   (TJM/RFT)

WILLIAM LAPE, *Superintendent*; JOAN SMITH,
*Deputy Superintendent of Health*; MR. KILLAR,
*I.G.R.C. Supervisor*; DR. MILLER, *Facility Health Services*
*Director*; DR. PAOLANO, *R.M.U. Clinic*; MR. ONEAL,[1]
*Correction Officer*; K. TALAVERA, *Counselor*;
MS. MARILYN, *Dietician*; MR. SEGATTO, *Sergeant*;
M. MOTTO, *Nurse in R.M.U.*; and V. BALDWIN,
*Nurse Administrator*,

Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

ANDRES MARTINEZ
Plaintiff, *Pro Se*
98-A-3211
Coxsackie Correctional Facility
P.O. Box 999
Coxsackie, New York 12051

HON. ERIC T. SCHNEIDERMAN            KRISTA A. ROCK, ESQ.
New York State Attorney General      Assistant Attorney General
Attorney for Defendants
Department of Law
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

---

[1] Defendant is named in Plaintiff's Complaint as "Oneal." However, the record before us clearly indicates the correct spelling of Defendant's last name as "O'Neil," which this Court will now adopt. *See*, *e.g.*, Dkt. No. 21, Def.s' Lt.-Mot.

## REPORT-RECOMMENDATION and ORDER

Plaintiff Andres Martinez, a New York state prison inmate proceeding *pro se* and *in forma pauperis*, commenced this action pursuant to 42 U.S.C. § 1983, claiming that the Defendants violated his rights under the Eighth Amendment. Dkt. No. 8, Second Am. Compl. Defendants bring a Motion to Dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), Dkt. No. 32, which Plaintiff opposes, Dkt. No. 36. Defendants filed a Reply to Plaintiff's Opposition. Dkt. No. 37. For the reasons that follow, we recommend that Defendants' Motion be **granted** and Plantiff's Second Amended Complaint be **dismissed** in its entirety.

## I. BACKGROUND

Plaintiff initiated this civil rights action on June 10, 2009, while an inmate at Coxsackie Correctional Facility (Coxsackie). *See* Dkt. No. 1, Compl. The Honorable Thomas J. McAvoy, Senior United States District Judge, found that both Plaintiff's Complaint and his subsequent Amended Complaint (Dkt. No. 6) could not proceed as drafted, but permitted Plaintiff, in light of his *pro se* status, the opportunity to amend his pleadings to cure various deficiencies noted therein. *See* Dkt. Nos. 5, Order, dated June 25, 2009, & 7, Order, dated Sept. 25, 2009. In accordance with those Orders, Plaintiff filed his Second Amended Complaint on October 26, 2009. Dkt. No. 8.

In accordance with the standard used in assessing a motion to dismiss, the following facts are derived from the allegations in Plaintiff's Second Amended Complaint and are taken as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).

Plaintiff arrived at Coxsackie in "June of 1999 with good health and free of H. pylori," or Helicobacter pylori bacteria. Second Am. Compl. at p. 8. On March 11, 2008, Plaintiff was prescribed several medications to combat stomach pain and indigestion. On April 4, 2008, Plaintiff

woke up with abdominal pain and was taken to Albany Medical Center where he underwent testing. The Albany Medical doctors concluded that he needed an emergency operation because Plaintiff's body "was infected by bacteria known as H. pylori [and Plaintiff] already developed . . . a malicious ulcer."[2]  *Id.*  Plaintiff underwent surgery on April 11, 2008, after which Plaintiff "recover[ed] to perfect state, but after three months [he] was in strong pain again."  *See id.* at pp. 8 & 13.  Plaintiff was seen by Defendant Doctor Miller, and the screening test conducted on July 25, 2008 indicated that Plaintiff had 1.05 units of antibodies corresponding to H. pylori in his system, meaning he tested positive for the presense of the bacteria because the measured units were higher than .99.  *See id.* at pp. 8 & 15.

Plaintiff alleges that he contracted this bacterial infection at Coxsackie due to the Defendants' inadequate medical care and conditions of confinement.  *See* Dkt. No. 8.  Plaintiff states that Defendants' lack of programs to control H. pylori outbreaks, investigate the cause of Plaintiff's exposure, and their general standard of care, all violate his constitutional rights.  He additionally complains about the food preparation as a possible cause of his H. pylori bacteria infection and the stomach pain he and other inmates suffered, noting that he filed numerous grievances contending that the food served at Coxsackie was too greasy and caused elevated cholesterol levels, and was served past its expiration date, as well as additionally claiming that the water was discolored and smelled of chemicals or sewage.  *See id.* at pp. 6-7 & 9-10; Dkt. No. 29, Exs. in Support of Second

---

[2] Interestingly, while this statement of fact is, in accordance with the Rule 12(b) motion to dismiss standard of review, taken as true, it is not supported by Plaintiff's own pleadings.  The post-operation report Plaintiff attached to his Second Amended Complaint indicates that the purpose of the emergency surgery was because Plaintiff was suffering from Acute Pancreatitis.  Second Am. Compl. at p. 13.  Plaintiff's gallbladder was subsequently removed in the surgery, and the report noted that his pancreas was inflamed, but there was no mention of any bacterial infection or ulcer.  *Id.*  Additionally, a response to Plaintiff's inmate grievance indicates that a biopsy taken the day before his surgery tested negative for any H. pylori bacteria.  *See* Dkt. No. 29, Exs. in Support of Second Am. Compl., at p. 13.

Am. Compl., at pp. 6-8.

## II. DISCUSSION

### A. Standard of Review

On a motion to dismiss, the trial court's function "is merely to assess the legal feasability of

the complaint, not to assay the weight of the evidence which might be offered in support thereof."

*Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468

U.S. 183 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters

alleged in the complaint, documents attached to the complaint, and matters to which the court may

take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing

*Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). Moreover, "even if not attached

or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is

*integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v.

Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis in original) (quoting *Cortec Indus., Inc. v.

Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn

from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625,

AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157,

168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129

S.Ct. 1937, 1949 (2009).  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1960 (citing *Twombly*).[3]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1949.  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).  The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1950-51.

With this standard in tow, we consider the plausibility of Plaintiff's Second Amended Complaint.

---

[3] By its opinion in *Bell Atl. Corp. v. Twombly* and then again in *Ashcroft v. Iqbal*, the Supreme Court abrogated the often-cited language of *Conley v. Gibson* "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 561 (2007) (quoting *Conley*, 355 U.S. 41, 45-46 (1957)).  In so doing, the Court found that *Conley* "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id.* at 563.

## B. Personal Involvement

It is well settled that the personal involvement of a defendant is a prerequisite for the assessment of damages in a § 1983 action. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). Furthermore, the doctrine of *respondeat superior* is inapplicable to § 1983 claims. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (internal citations omitted); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Thus, a defendant may not be liable for damages simply by virtue of holding a supervisory position. *See, e.g.*, *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Rather, the personal involvement of a supervisory defendant may be shown when:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d at 873.

Martinez brings this civil rights action against Defendants Lape, Smith, and Killar – all of whom were employed in supervisory positions at Coxsackie during the time pertinent to Plaintiff's claims – claiming that they violated his Eighth Amendment rights. Plaintiff does not explain, however, what these Defendants purportedly did to directly participate in the alleged constitutional violation, that they had or should have had knowledge of the occurrence of unconstitutional acts, nor that their policies allowed the continuance of constitutional violations. Rather, Plaintiff appears to be bringing legal action against these Defendants due solely to their supervisory positions within New York State's Department of Correctional Services (DOCS). Plaintiff claims that both Defendants Lape and Killar, as the Superintendent of Coxsackie and an Inmate Grievance

*-6-*

Resolution Committee Supervisor, respectively, violated his constitutional rights by denying his grievances, which Plaintiff describes as "covering up" his bacterial infection, and by failing to respond to his written complaints that sought, *inter alia*, an investigation into the alleged source of Plaintiff's bacterial infection.  *See* Second Am. Compl. at pp. 9-10; Exs. in Support of Second Am. Compl., at pp. 3-7.  He brings similar allegations against Defendant Smith as well as charging that Smith, as the Deputy Superintendent of Health, did not inform other DOCS staff of the "necessary instructions after the operations that [were] done to [Plaintiff]."  Second Am. Compl. at p. 9.

The Second Circuit has repeatedly held that receiving and responding to grievances and letters of complaint is insufficient to establish the requisite knowledge and personal involvement needed to bring a section 1983 claim.  *See Goris v. Breslin*, 2010 WL 4840482, at *1 (2d Cir. Nov. 30, 2010) (stating that the receipt of two letters from an inmate does not constitute personal involvement) (unpublished opinon); *Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009) (noting that merely filing complaints with defendants is insufficient to establish personal involvement); s*ee also Burgess v. Morse*, 259 F. Supp. 2d 240, 249 (W.D.N.Y. 2003) (stating that "one letter to [defendant] is insufficient to show the personal involvement necessary to establish § 1983 liability").  As such, we find that Defendants Lape and Killar had no personal involvement in the alleged wrongdoing and recommend **dismissal** of the claims against them.

Personal involvement also cannot be imputed to Defendant Smith for his unsatisfactory grievance responses alone, so we turn to Plaintiff's claim that Smith failed to "bring the necessary instructions" to others after Plaintiff's surgery.  It is undisputed that Smith, as well as the other previously considered Defendants, had direct or indirect supervisory authority over other staff, but this fact in and of itself is not sufficient to hold them personally liable for damages for possible

constitutional violations alleged under § 1983. "[S]upervisory officials generally are entitled to delegate medical responsibility to facility medical staffs and are entitled to rely on the opinion of medical staff concerning the proper course of treatment." *See Rashid v. Hussain*, 1997 WL 642549, at *11 (N.D.N.Y. Oct. 15, 1997) (internal citations omitted). To the extent that these "necessary instructions" are related to Plaintiff claims that his diet subsequent to surgery was improper, or that he was not allowed enough recovery time before being assimilated back to the general inmate population, the DOCS staff specifically delegated with this responsibility are the more proper persons for this section 1983 claim.[4] There are no facts nor indications in Plaintiff's pleading that Defendant Smith ever came into contact with Plaintiff or participated in any conduct that would have violated his constitutional rights, apart from Smith's role as a supervisor. Accordingly, we recommend Defendant Smith be **dismissed** because of a lack of personal involvement.

Furthermore, Plaintiff names Baldwin and Motto as Defendants in his Second Amended Complaint. There are no corresponding facts nor claims, however, against either Defendant. Motto's name does not appear in the pleadings. Additionally, a letter dated February 24, 2010, from the Deputy Counsel of DOCS regarding service of process reports that no person with that name is employed at any facility within the Department, let alone as a nurse in the Regional Medical Unit (RMU) at Coxsackie. Dkt. No. 31.[5] Baldwin's name likewise does not appear in Plaintiff's Second Amended Complaint, save through his self-identification as the author of a grievance denial memorandum that Plaintiff attaches to the pleading. Second Am. Compl. at p. 12. Thus, because

---

[4] In fact, these officers are identified as Defendants in Plaintiff's Second Amended Complaint. *See* Second Am. Compl. at p. 9; *see infra* Part II.C.1.ii.

[5] Because Defendant Motto was not served with process in this action, and thus has no notice of the claim against him or her, this Court may dismiss Motto from the action *sua sponte* under FED. R. CIV. P. 4(m).

Plaintiff includes no specific facts nor allegations of any personal involvement of these Defendants towards his complained constitutional injury, we recommend the claims against Motto and Baldwin be **dismissed**.

### C. Eighth Amendment

Plaintiff alleges that the Defendants failed to provide adequate medical treatment and that they failed to provide humane conditions of confinement, both in violation of his Eighth Amendment right to be free from cruel and unusual punishment.  While the same basic legal standard applies to both claims, the slight nuances in the elements warrant examining these two claims separately.

#### 1. Adequate Medical Care

Plaintiff claims that his constitutional rights under the Eighth Amendment were violated because the Defendants provided inadequate care for his serious medical needs.  Specifically, Plaintiff complains that Defendant O'Neil delayed responding to Plaintiff's pain, that Plaintiff was prematurely reintegrated into the general prison population following his surgery, and that he was prescribed incorrect medication.

To state a claim under § 1983 for inadequate medical treatment in violation of the Eighth Amendment, a plaintiff must show that the defendant acted with "deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Thus, "[t]he deliberate indifference standard embodies both an objective and a subjective prong" which the plaintiff must establish. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994), *cert. denied*, 513 U.S. 1154 (1995).  Under the objective prong, the alleged medical need must be "sufficiently serious."  *Id.*; *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  Under the subjective component, the plaintiff must demonstrate that the defendants acted with "a sufficiently culpable state of mind."  *Hathaway v. Coughlin*, 37

F.3d at 66.  The requisite culpable mental state is similar to that of criminal recklessness.  *Id.;*

*Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991).  This standard must be met for each claim against

each individual Defendant in this action.

*i. O'Neil's Delayed Response*

Plaintiff claims that Defendant O'Neil "delayed response" on the morning of April 4, 2008,

when Plaintiff stated he was experiencing severe abdominal pain.  Second Am. Compl. at p. 8.

Plaintiff fails to show serious harm or an exposure to a risk of serious harm necessary to

satisfy the objective test of deliberate indifference to a medical need.  Taking the Second Amended

Complaint as true, Martinez does not state that he suffered any harm as a result of the alleged delay

in response time, nor an indication as to how much time elapsed between when he contacted Officer

O'Neil and when he received assistance.  Rather, Plaintiff acknowledges that he underwent medical

testing at Coxsackie's infirmary that same morning and was subsequently taken to the hospital.  *Id.*

Furthermore, in Plaintiff's original Amended Complaint submitted to this Court, he maintains that

after getting the officer's attention, he was "take[n] immedi[a]tely to the medical department."  *See*

Dkt. No. 6, Am. Compl, at p. 6.  Thus, there is insufficient factual support for Plaintiff's claim that

Defendant O'Neil violated his constitutional rights by delaying Plaintiff's access to medical care.

Accordingly, we recommend this claim be **dismissed**.

*ii. Post-Surgery Relocation*

Plaintiff also alleges that after returning to Coxsackie from surgery, Defendants O'Neil and

Segatto were deliberately indifferent to his medical needs by forcing him to return to the general

prison inmate population before he was completely recovered from his surgery.[6]   Second Am. Compl. at p. 9.

Plaintiff claims that his reintroduction into the prison population caused his stomach to swell, which resulted in his placement in intensive care for eleven (11) days.  *Id.*  This statement is sufficient to at least find that Plaintiff suffered from a serious medical condition or risk of injury. However, Plaintiff does not allege that the Defendants acted with a sufficiently culpable state of mind.  Plaintiff himself described the Defendants' actions – the moving of Plaintiff, while "still in bad shape . . . to another facility" – as "negligence."  *Id.*  The subjective element of an Eighth Amendment claim "entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).  Moreover, according to a June 23, 2008 grievance that Plaintiff attached to his Second Amended Complaint, it appears that Defendants O'Neil and Segatto were following the directions of Plaintiff's treating physician.  The response to Plaintiff's grievance notes that "[t]he doctor treating him did not feel he required bed rest or feed-in-cell permit after he was discharged back to general population 10 days after surgery."  Second Am. Compl. at p. 17.  Thus, it appears that the Defendants, who were following Plaintiff's treating physician's orders, did not act with the requisite culpable state of mind needed to properly allege a claim of deliberate indifference to a serious medical need.  We recommend these claims against Defendants O'Neil and Segatto be **dismissed**.

---

[6] In his Second Amended Complaint, Plaintiff also includes the name "Sergeant Marshall" as an additional purported violator of his constitutional rights.  Sergeant Marshall, however, was not included as a listed party or named a Defendant, nor was his name included in any of Plaintiff's prior or subsequent filings.  Therefore, to the extent that Sergeant Marshall is included in this action, this Court recommends dismissal of the claims as Sergeant Marshall has not been served with process in this action.  *See supra* note 5.

*-11-*

*iii. Incorrect Medical Prescriptions and Inattentive Care*

Plaintiff next claims that Defendants Paolano and Miller violated his Eighth Amendment rights by "not prescrib[ing] the correct drugs" and by "medica[l] inattention." Second Am. Compl. at pp. 8–9.  Again, assuming *arguendo* that Plaintiff adequately alleges a sufficiently serious medical condition or risk, Plaintiff fails to allege that the Defendants possessed the wanton state of mind required to state a claim of deliberate indifference.

Plaintiff claims that he was prescribed several medications on March 11, 2008, in response to his complaints of stomach pain. *Id.* at p. 8.  After reporting severe abdominal pain on April 4, 2008, Martinez was taken to the infirmary where he underwent testing and was subsequently transported to Albany Medical Center. *Id.*  At the hospital, he had a colonoscopy, a biopsy, CAT-scan, blood work, and "other tests" before his surgery, which returned him to a "perfect state" until he experienced pain again three months later. *Id.*  Plaintiff subsequently underwent more testing that revealed a bacterial infection. *Id.* at pp. 8 & 15–16.  At that time, he was prescribed three medications and was also seen twice by a gastroenterologist. *Id.* at p. 8; Dkt. No. 29, Exs. in Support of Second Am. Compl., at p. 18.

In light of the above recited treatment, Martinez cannot possibly establish the subjective element of his medical indifference claim.  Factually, there are no allegations to support his broad conclusory claims that he received inadequate medical care due to Defendant's deliberate indifference to a serious medical need.  Plaintiff was treated promptly, was prescribed a litany of medications, underwent a battery of tests, and was seen by outside specialists on numerous occasions.  Plaintiff's complaints against these particular Defendants amount to nothing more than mere disagreement over his treatment, which is not enough to allege a constitutional violation. *See*

*O'Connor v. McArdle*, 2006 WL 436091, at *5 (N.D.N.Y. Feb. 22, 2006) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, that fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").[7]  Therefore, because Plaintiff fails to state a plausible claim against Defendants Paolano and Miller, we recommend **dismissal** of the claim.

### 2. Conditions of Confinement

Martinez also alleges that the Defendants failed to provide humane conditions of confinement by providing him with substandard food and water that exposed him to the H. pylori bacteria.

In order to state a valid conditions of confinement claim under the Eighth Amendment, a plaintiff must allege that (1) the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) the prison officials acted with "deliberate indifference."  *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991) (citation omitted) (cited in *Branham v. Meachum*, 77 F.3d 626, 630-31 (2d Cir. 1996)).

In *Phelps v. Kapnolas*, the Second Circuit set out in detail the requirements that a plaintiff must prove in order to make out a claim that the conditions of his confinement violated the Eighth Amendment:

> Under the Eighth Amendment, States must not deprive prisoners of their "basic human needs — *e.g.*, food, clothing, shelter, medical care, and reasonable safety." *Helling*, 509 U.S. at 32 (citation and internal quotation marks omitted).  Nor may

---

[7] *See also Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y.2001) ("[D]isagreements over medications, diagnostic techniques . . . forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim.  These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment."); *Estelle v. Gamble*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").

*-13-*

prison officials expose prisoners to conditions that "pose an unreasonable risk of serious damage to [their] future health." *Id*. at 35. Ultimately, to establish the objective element of an Eighth Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency. *Id*. at 35-36; *Rhodes*, 452 U.S. 337 at 347.

Concerning the "subjective" requirement, the Supreme Court has explained that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. *Phelps v. Kapnolas*, 308 F.3d 180, 185-86 (2d Cir. 2002).

### i. Exposure to H. pylori

Liberally construing his Second Amended Complaint, Plaintiff claims that the conditions in which he was housed at Coxsackie failed to meet the standard guaranteed by the Eighth Amendment because he contracted the H. pylori bacteria on more than one occasion.

Exposure to unsafe toxins can constitute a dangerous condition sufficient to satisfy the objective prong. *See Helling v. McKinney*, 509 U.S. 25, 35-37 (1993) (discussing second-hand tobacco smoke); *LeBounty v. Coughlin*, 137 F.3d 68, 72 (2d Cir. 1998) (discussing asbestos). However, this Court need not decide now whether a continued exposure to H. pylori constitutes a sufficiently serious condition, as Plaintiff alleges no specific facts to support his conclusory assertion. To bolster his claims, Plaintiff alleges that a few other inmates have also gotten sick, presumably due to exposure to H. pylori. But even taking the existence of their illnesses as true, this fact alone does not raise his claim above a speculative level. *See Cherry v. Edwards*, 2005 WL 107095, at *8 (S.D.N.Y. Jan. 18, 2005) ("Contrary to the Plaintiffs' assertion, the fact that eight inmates out of a total population of more than 500 inmates tested positive for the H. pylori antibody in a single year does not suggest that there was a particular problem . . . because it appears

-14-

undisputed that H. pylori is 'the most common infection worldwide,' that more than half the people in the United States are infected by the time they reach their 40s.").

Moreover, Plaintiff fails to establish that the Defendants acted, or failed to act, with the requisite culpability for a finding of deliberate indifference. Therefore, we recommend this claim be **dismissed**.

### ii. Quality of Food and Water

Finally, Plaintiff complains that the food and juice served at Coxsackie was too greasy, caused elevated cholesterol levels, and was served past its expiration date. *See* Exs. in Support of Second Am. Compl. at pp. 6-7. He also complains that the water is discolored, smells of chemicals or sewage, and is a possible cause of the stomach pain he and other inmates suffered. Second Am. Compl. at pp. 6-7.

Turning to Plaintiff's particular complaints with the food, he first states that he was served greasy food, including a hamburger, on two successive days following his surgery, despite being ordered a low-fat post-surgery diet by his treating physician. *See* Exs. in Support of Second Am. Compl. at p. 7; Second Am. Compl. at p. 17. This food caused him to feel nauseous, experience abdominal pain, and vomit at least once. Exs. in Support of Second Am. Compl. at p. 7. When the same type of food arrived on the third consecutive day, Martinez advised the staff nurse of his dietary needs and refused to eat it. *Id.*

Assuming for the moment that these facts would satisfy the objective element of Plaintiff's Eighth Amendment claim, he again fails to provide sufficient factual allegations to establish the subjective element of his claim. He asserts that Defendant Miller failed to advise the prison officials of his post-surgery dietary needs and that Defendant Marilyn, the dietician, provided food that was

inadequate.  *Id.*; Second Am. Compl. at p. 9.  Accepting this as true, Defendant Marilyn cannot be said to have acted with a culpable state of mind.  If the medical staff failed to properly notify the dietician and kitchen staff of his dietary needs, then these Defendants could not have known that serving him greasy food, like hamburgers, would inflict pain and suffering.  Furthermore, Defendant Miller's failure to adequately notify other prison staff of Plaintiff's dietary needs amounts to negligence at most and is insufficient to establish the subjective element of deliberate indifference. *See Abdush-Shahid v. Coughlin*, 933 F. Supp. 168, 180 (N.D.N.Y. 1996) ("Mere negligence or inadvertent failure to provide a medically necessary diet is not a constitutional violation, however. 'Deliberate indifference' must be demonstrated by proof that corrections personnel intentionally denied, delayed access to, or interfered with prescribed treatment.").  Additionally, Plaintiff did not immediately inform the prison staff that he was not receiving his prescribed diet.  *See Evans v. Albany Cnty. Corr. Facility*, 2009 WL 1401645, at *9 (N.D.N.Y. May 14, 2009) (finding that if a prisoner fails to advise staff of his medically prescribed dietary needs, "deliberate indifference does not exist") (internal quotation marks omitted).  Martinez only made the prison staff aware of his medically prescribed diet after he was served food on the third day.  There is no allegation that the matter was not remedied after such notification was made.

Finally, Plaintiff's allegation that he was served expired food and juice does not rise to the level of an Eighth Amendment claim.  While the Eighth Amendment places a duty upon prison officials to ensure that prisoners receive adequate food, *Farmer v. Brennan*, 511 U.S. at 832, prisoners are to be provided only with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it," *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (citation omitted); *see also*

*Lunney v. Brureton*, 2005 WL 121720, at *6 (S.D.N.Y. Jan. 21, 2005).  "[S]ociety does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim."  *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999).  Other than the unsupported broad assertion that he contracted H. pylori from the food or water at Coxsackie, Plaintiff fails to allege how the expired food and juice posed an immediate risk to his health, inflicted pain and suffering, or otherwise amounted to an extreme deprivation.  Therefore, we recommend that Plaintiff's claims relating to the quality of the food served at Coxsackie be **dismissed**.

Plaintiff also brings a claim complaining about the quality of the water, specifically that it "is interm[i]ttently discolored and smells of either chemicals or fecal/sewage matter."  Second Am. Compl. at pp. 6-7.  This claim, however, has no causal connection to his complained-about illness: that he was infected with the H. pylori bacteria.  Martinez does not allege he contracted the bacteria from the facility's water, but rather seems to make just a general, blanket conclusory allegation that the "water system is not operating on a constitutional level."  *Id.*  This allegation is utterly bereft of factual allegations which would allow for the Court to deduce the plausibility of a cognizable cause of action, *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct.1937, 1949 & 1960 (2009), or to link the claim with the complained injury, *Perez v. Hawk*, 302 F. Supp. 2d 9, 22 (E.D.N.Y. 2004) (dismissing an Eighth Amendment inadequate prison conditions claim because plaintiff failed to allege a causal link between the water supply and his symptoms, and because plaintiff's "conclusory allegations with respect to the water supply fail[ed] to 'demonstrate that the conditions of his confinement result in unquestioned and serious deprivations of basic human needs' or deprive[] him 'of the minimal civilized measure of life's necessities'") (citing *Anderson v. Coughlin*, 757 F.2d 33, 34-35 (2d Cir.

1985)).[8]  Accordingly, this Court recommends Plaintiff's claim relating to the water quality at Coxsackie be **dismissed**.

## III.  CONCLUSION

While this Court recognizes the Second Circuit's preference to provide *pro se* plaintiffs with leave to amend their pleadings prior to dismissal, Martinez has already been afforded two opportunities to amend his Complaint.  In light of the discussion herein, providing Plaintiff another opportunity to amend would be futile.

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion to Dismiss (Dkt. No. 32) be **GRANTED** and Plaintiff's Second Amended Complaint (Dkt. No. 8) be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

---

[8] *See also Cruz v. Jackson*, 1997 WL 45348, at *6-7 (S.D.N.Y. Feb. 5, 1997) (finding an isolated serving of rusty drinking water would not give rise to an Eighth Amendment claim).

Date:   March 28, 2011
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

**-19-**